IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JANIS WILSON o/b/o
Christopher Todd Wilson                                                PLAINTIFF

VS.                                         CIVIL ACTION NO. 3:12cv707-DPJ-FKB

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                                     DEFENDANT

## REPORT AND RECOMMENDATION

Janis Wilson brought this action on behalf of her son, Christopher Todd Wilson, deceased, to obtain judicial review of a final decision of the Commissioner of the Social Security Administration.  Presently before the Court is Plaintiff's motion for summary judgment [16] and Defendant's motion to affirm [17].  Having considered the memoranda of the parties and the administrative record, the undersigned recommends that the Plaintiff's motion be granted, the Commissioner's motion be denied, and this matter be remanded to the Commissioner for further proceedings.

### I. Procedural History and Administrative Record

Christopher Todd Wilson was born on June 22, 1964.  Wilson filed for a period of disability and disability insurance benefits on October 3, 2008, and supplemental security income on October 7, 2008.  His applications were denied initially and on reconsideration, and he requested and was granted a hearing before an administrative law judge (ALJ).  On November 1, 2010, the ALJ issued a decision denying benefits.  The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the

Commissioner. Wilson died on September 8, 2012, of anoxic brain injury resulting from ventricular fibrillation. His mother, Janis Wilson, brought this appeal on his behalf pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Wilson's medical history is significant for low back pain. Wilson first sought treatment for low back pain in May of 2007 at Bearden Healthcare Associates. He described it as a stabbing pain radiating to the left hip, with numbness in both lower extremities. (R. 242). Wilson reported that the pain had begun with an injury 20 years earlier and had progressed since that time. (R. 242). He entered into a pain management contract and was prescribed baclofen and Lortab. (R. 239-40). In conjunction with his pain management, Wilson was referred to an orthopedist, Dr. Elmer Pinzon, and underwent an MRI. (R. 324). Dr. Pinzon diagnosed multilevel degenerative and spondylitic changes in the lumbar spine, primarily at L4-5 and L5-S1, with grade 1 spondylolisthesis at L4-5. (R. 209-13). He advised continuation with chronic pain management. (R. 213). Wilson did not respond to his initial pain medications; however, his pain improved with a regimen of Lyrica, Oxycontin, Roxicodone, baclofen, Flexeril, and Neurontin. (R. 227-35). By December of 2007, he was describing his back pain without medication as 7-8 on a 10-point scale, and 3-4 with medication. (R. 226). Thereafter through August of 2010, he rated his pain between 3 and 6 with this regimen. (R. 215, 218, 220, 221, 224, 225, 292, 296, 299, 347, 354, 356). At Bearden he was also prescribed Xanax for anxiety and trazodone for sleep difficulties. An MRI on June 8, 2010, revealed multilevel degenerative changes, consisting primarily of facet arthropathy

2

and foraminal stenosis. (R. 344). Impression was L4 spondylolysis and mild L4-5 anterolisthesis (R. 344).

The records also reveal a history of morbid obesity, hypertension, and type II diabetes. For most of the time between May 2007 and the date of the hearing, Wilson weighed in excess of 300 pounds. On several occasions, Wilson experienced rapid weight gain attributed to excess fluid. In May of 2010, he was diagnosed with a heart murmur and atrial fibrillation, for which he was prescribed Coumadin. (R. 377). In July of 2010, he reported that he had recently gone to the emergency room for congestive heart failure and had undergone diuresis. (R. 365). Later that same month he reported a second visit to the emergency room with rapid weight gain from fluid retention and a hypotensive episode. (R. 362-63).

In June of 2010, Wilson was referred to Cherokee Health Systems for evaluation of depression. Upon initial examination, mood was depressed, affect was restricted, and Wilson was tearful. (R. 372). He reported sleep problems, loss of appetite, difficulties in activities of daily living, and social isolation. (R. 369, 372). Axis I diagnosis was major depression, single episode, unspecified; Axis V was a Global Assessment of Functioning (GAF)) of 50.[1] (R. 371). On July 9, 2010, after a month of Celexa, he reported significant improvements, and a mental status examination was normal. (R. 368). Two weeks later, however, Wilson reported an increase in depression. (R. 364). The last two recorded

---

[1] The Global Assessment of Functioning is a standard measurement of an individual's overall psychological, social, and occupational functioning on a scale of 1-100, with 100 representing "superior functioning." American Psychiatric Institute, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

mental health visits, on August 16, 2010, and August 27, 2010, show continued complaints of depression, but with slight improvement on the latter date. (R. 357-58).

The record contains one consultative physical examination, performed by Dr. Krish Purswani, on December 31, 2008. Back straight leg raise was positive at forty-five degrees on the right; sitting straight leg raise was positive at five degrees on the right. (R. 259). Assessment was chronic low back pain, morbid obesity, and tobacco abuse, heavy. (R. 259).

A non-examining physical RFC assessment was made by Dr. William Downey on February 11, 2009. Dr. Downey opined that Wilson could frequently lift ten pounds, occasionally lift twenty pounds,[2] stand/walk for six hours, sit six hours, that he had unlimited use of hands and feet to operate hand and foot controls, could only occasionally climb a ladder, and could frequently perform other postural activities. (R. 283-91).

Larry Welsh, Ed.D., completed a psychiatric review technique form dated December 11, 2008. Dr. Welsh opined that Wilson had no restriction in activities of daily living and maintaining social function, that he had mild difficulties in maintaining concentration, persistence, or pace, and that he had experienced no episodes of decompensation. (R. 255). He concluded that Wilson did not suffer from a severe mental impairment. (R. 245).

---

[2]Dr. Downy first opined that Wilson could frequently lift twenty-five pounds and occasionally lift fifty pounds. (R. 284). However, after reviewing records showing an abnormal MRI of Wilson's lumbar spine, decreased range of motion, complaints of back and bilateral lower extremity pain, and obesity with a BMI greater than forty, Dr. Downy revised his opinion by reducing the amount that Wilson could frequently and occasionally lift to ten and twenty pounds, respectively. (R. 290).

At the hearing, Wilson testified that he lived with his mother and a brother who suffers from a brain injury. (R. 38, 48). He stayed at home most of the time, and his activities were limited to watching television and some reading, although he described concentration problems with the latter. (R. 45, 47). He drove occasionally, mainly down the road to a convenience store. (R. 44). He performed no household chores. (R. 48). In addition to back and leg pain, he suffered from fatigue, shortness of breath, and depression with crying spells. (R. 44, 47-48).

## II. The Decision of the ALJ and Analysis

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[3] He found that Wilson was insured through December 31, 2010,

---

[3]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)   whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)   whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)   whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)   whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)   whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett*

and that he had not engaged in substantial gainful employment since his alleged onset date of December 3, 2007. (R. 17). The ALJ determined that Wilson had the severe impairments of degenerative disc disease and heart murmur. (R. 17). At step three, the ALJ found that Wilson did not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). The ALJ further found that Wilson had the residual functional capacity to perform a full range of medium work. (R. 21). Relying upon the Dictionary of Occupational Titles (DOT), the ALJ determined that Wilson could perform his past relevant work as a cable installer and convenience store cashier. (R. 22).

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[4] In her memorandum, Plaintiff makes the following arguments in support of remand: (1) That the ALJ erred in failing to find that Wilson suffered from additional severe impairments; (2) that the ALJ's credibility finding was not supported by substantial evidence; (3) that the

---

*v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[4] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

ALJ erred in refusing to allow Wilson's mother, Plaintiff herein, to testify at the hearing; and (4) that the ALJ erred in his analysis of whether Wilson could return to his past relevant work.

Plaintiff argues that the ALJ erred in failing to find that Wilson's anxiety, depression, and obesity constituted severe impairments.  The severity standard in this circuit was established in the case of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985):   "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  *Stone,* 752 F.2d at 1101 (alterations in original).   This is essentially a *de minimis* standard, requiring the claimant to show only that the impairment causes "at least some restriction in [his] ability to perform work-related activities."  *Brock v. Astrue*, 2009 WL 3762978 at *1 (N.D. Miss. Nov. 10, 2009).

Plaintiff argues that the ALJ erred in failing to finding that Wilson's obesity was a severe impairment.  The medical evidence indicates that Wilson's obesity was such that it would be expected to have had some effect on his ability to perform work-related functions.  During most of the period from May of 2007 until the hearing date of October 19, 2010, Wilson, who was approximately  6'3" in height[5], weighed in excess of 300 pounds.  As of the hearing date, he weighed 314 pounds.  His obesity appears to have resulted in excess fluid retention, and the record shows that on several occasions he

---

[5]The medical records are not entirely consistent as to Wilson's height.  At the hearing, he stated that he was 6'3".

experienced significant fluctuations in weight over relatively short periods of time. For example, on December 11, 2007, Wilson weighed 337 pounds; two weeks later he had lost 28 pounds. (R. 273, 226). Wilson's weight on January 24, 2008, was 302 pounds. (R. 225). However, by February 18, 2008, his weight had increased to 330. (R. 270). One week later, on February 25, 2008, he had lost 35 pounds and was down to 295 pounds. (R. 224). This fluid retention resulted in further complications. In November of 2008, he presented with dermatitis and cellulitis associated with edema in his legs. (R. 263). In July of 2010, he went to the emergency room for congestive heart failure and underwent diuresis for excess fluid. (R. 365). A few days later, Wilson presented to the emergency room with rapid weight gain attributed to excess fluid and low blood pressure. (R. 362-63). There is also evidence that he suffered from sleep apnea and fatigue. (R. 273, 44, 210).

The manner in which obesity may limit function is explained in Social Security Ruling 02-1p, 2000 WL 628049. Limitations from obesity may include deterioration or impairment "in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing and pulling . . . .," as well as in the "ability to do postural functions, such as climbing, balance, stooping, and crouching." 2000 WL 628049, at *6. Furthermore, "[t]he ability to tolerate extreme heat, humidity, or hazards may also be affected." *Id.* The ruling points out that obesity may often affect an individual in a less than obvious manner - "[f]or example, some people with obesity also have sleep apnea." *Id.*[6]

---

[6]SSR 02-1p requires an ALJ evaluating obesity at steps three and four of the sequential process to assess the effect the obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment,

Yet, there is no indication in his opinion that the ALJ gave any consideration to Wilson's obesity and its effect upon his functioning, either separately or in combination with Wilson's other impairments.  Indeed, nowhere in his opinion does the ALJ mention Wilson's obesity or his recorded weight; a reader of the opinion would never know that Wilson was obese.  An ALJ must consider the combined effects of all of a claimant's impairments, both severe and non-severe.  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  The ALJ's failure to consider Wilson's obesity in any manner leads the undersigned to conclude that his decision is not supported by substantial evidence.  For this reason, the undersigned recommends that this matter be remanded for consideration of how Wilson's obesity affected his functional ability.

Because the undersigned recommends remand, a full analysis of the merits of Plaintiff's remaining arguments is unnecessary.  However, the undersigned notes that Plaintiff's argument that the ALJ did not properly classify Wilson's past relevant work as a cable installer may have merit.[7]  On remand, the ALJ should ensure that he has correctly classified Wilson's past relevant work, obtaining the testimony of a vocational expert, if

---

taking into account fatigue or other combined effects of obesity which, with other impairments, may be greater than might be expected without obesity. *Id.*  Technically speaking, this requirement is not directly applicable in the present case, as the ALJ never found that Wilson's obesity was severe.  Nevertheless, it is instructive for its emphasis on the importance of careful consideration of a claimant's obesity.

[7]The ALJ concluded that Wilson's job as a cable installer was described in DOT 821.361-010. 1991 WL 681658.  This description appears to be for the installation and repair of underground cable systems used to conduct electricity.  Wilson's past relevant work was as an installer of computer and telephone cables.

necessary. Furthermore, some of the ALJ's findings were based upon misstatements of the record. For example, in finding that Wilson did not suffer a severe mental impairment, the ALJ stated that Wilson had never required or sought treatment from a mental health professional, when in fact the record indicates that Wilson was treated by mental health professionals at Cherokee from June 2010 until at least August of 2010 for depression and anxiety. Similarly, in finding that Wilson's complaints of pain and limitation were not entirely credible, the ALJ gave as one of his supporting reasons that Wilson had never sought or been referred to a specialist for his back problems, whereas in fact Wilson was referred to and treated by Dr. Pinzon, an orthopedist, in 2007. On remand, the ALJ should reconsider his findings in light of the facts as set forth in the record.

### III. Conclusion

The undersigned recommends that Plaintiff's motion [16] be granted, that the Commissioner's motion [17] be denied, that this matter be remanded to the Commissioner for proceedings consistent with this opinion. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district

court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 22nd day of January, 2014.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE